Commonwealth *v.* Lawson et al., Appellants.

Submitted September 28, 1972. Before JONES, C. J., EAGEN, O'BRIEN, ROBERTS, POMEROY, NIX and MANDERINO, JJ.

*Sallie Ann Radick* and *John J. Dean,* Assistant Public Defenders, and *George H. Ross,* Public Defender, for appellants.

*Carol Mary Los* and *Robert L. Eberhardt,* Assistant District Attorneys, and *Robert W. Duggan,* District Attorney, for Commonwealth, appellee.

OPINION BY MR. JUSTICE MANDERINO, September 21, 1973:

Appellants, Aldon Lawson and Demetrius Lawson, are husband and wife, who were convicted after separate nonjury trials of the same three offenses—posses-

sion of narcotic drugs, dealing in narcotic drugs, and conspiracy to commit an unlawful act. Aldon Lawson received a sentence of five to twenty years for dealing in narcotic drugs, a concurrent sentence of two to five years for possession of narcotic drugs, and a suspended sentence for the conspiracy. Demetrius Lawson received a sentence of two to five years for possession of narcotic drugs, and suspended sentences for dealing in narcotic drugs and the conspiracy. Post-trial motions were denied and the Superior Court affirmed the judgments of sentence. These appeals were allowed in which we also affirm the judgments of sentence.

Police officers, who were located in an abandoned building approximately thirty feet away, observed the appellants standing on the street in front of a bar. The observation began about 11:50 p.m. The area was lit from a streetlight about ten feet away from the appellants. Binoculars were used for the observation. At least one officer used high powered day and night binoculars. The officers observed three separate transactions taking place. During each transaction, the officers observed a third person approach and hand over paper money to the husband, Aldon Lawson. The husband would then walk over to his wife, who was standing several feet away. She would remove from her bosom something that looked like a dark sack. From the sack a small item was then taken and given to the husband. The wife would return the dark sack to her bosom and the husband would return to the person who had given him the money and hand over the item removed from the sack. The person receiving the item would leave the scene immediately. The husband put the money he had received in his pocket.

After the third transaction, the observing officers, using a two-way radio, informed other officers who were in an unmarked car near the scene, of their observations. The officers in the car immediately drove to

the scene. When the appellants saw the car pull up, they quickly headed into the bar. The wife entered first. The husband entered the bar and stood in the doorway, blocking the entrance. One officer went by the husband and arrested the wife, who was heading towards the ladies' room. Another officer arrested the husband.

At the police station, when the appellant wife was about to be searched, she handed over a large blue balloon which she had taken from her bosom. Inside the balloon was a plastic bag and inside the plastic bag were ten capsules of white powder later identified as heroin. No narcotics were found on the husband's person, but he had approximately $208 in his wallet.

Essentially, the appellants claim (1) the lack of probable cause for their arrest, (2) the insufficiency of the evidence, and (3) that husband and wife, acting alone, cannot be convicted of a conspiracy.

Appellants rely on *Henry v. United States*, 361 U.S. 98, 4 L. Ed. 2d 134, 80 S. Ct. 168 (1959), in challenging the lack of probable cause for their arrest. In *Henry*, agents, who were investigating a theft of whiskey from a terminal, observed the defendant and another man leave a tavern and drive to an alley behind residential premises, which the defendant entered, returning in a few minutes with some cartons. The agents were unable to follow the car. Later, the agents again saw the car parked near the tavern. They again observed the defendant and another man driving to the same residential premises, park in the alley and return to the car again with some cartons from the residential premises. Later, it was determined that the cartons contained stolen property, other than whiskey, and the defendant was placed under arrest. *Henry* said that: *"Riding in the car, stopping in an alley, picking up packages, driving away—these were all acts that were outwardly innocent. Their movements in the car had no mark of fleeing men or men acting furtively. The case might be*

different if the packages had been taken from a terminal or from an interstate trucking platform. But they were not. As we have said, the alley where the packages were picked up was *in a residential section.* The fact that packages have been stolen does not make every man who carries a package subject to arrest nor the package subject to seizure. The police must have reasonable grounds to believe that the particular package carried by the citizen is contraband. *Its shape and design might at times be adequate. The weight of it and the manner in which it is carried might at times be enough.* But there was nothing to indicate that the cartons here in issue probably contained liquor. The fact that they contained other contraband appeared only some hours after the arrest. . . . [A]n arrest is not justified by what the subsequent search discloses. Under our system suspicion is not enough for an officer to lay hands on a citizen. It is better, so the Fourth Amendment teaches, that the guilty sometimes go free than that citizens be subject to easy arrest." (Emphasis supplied.) 361 U.S. at 103-04, 4 L. Ed. 2d at 139-40, 80 S. Ct. at 172.

*Henry* makes it clear that all of the circumstances surrounding a transaction between citizens are to be considered in determining whether law enforcement officers have acted arbitrarily or have acted on the basis of *probable cause. "Probable cause* exists if the facts and circumstances known to the officer warrant a prudent man in believing that [an] offense has been committed." (Emphasis supplied.) *Henry v. United States, supra,* 361 U.S. at 102, 4 L. Ed. 2d at 138, 80 S. Ct. at 171 (1959). In each case an analysis of *all of the circumstances* is necessary. Such an analysis is not always an easy one to make. In this case, a close question is presented, but we believe that the officers reasonably concluded that an offense was being committed.

The officers observed three separate exchanges of small items for money on a street at about 11:50 p.m. The wife seller kept the items in her bosom between transactions. The husband seller who received the money from the buyers did not keep the items on his person. Only after receiving money from the buyer did the husband walk over to his wife who would remove the items from a place of concealment in her bosom for transfer to her husband. She would then return the items to their place of concealment. Only the husband seller would transact the business at hand with the buyer, while the wife seller remained several feet away. Each buyer would immediately depart after the completion of the transaction. When the appellants saw the unmarked car suddenly pull up alongside of them, they quickly headed into the bar. As the officers followed them, the wife headed toward the ladies' room while the husband blocked the entrance to the bar.

All of the detailed facts and circumstances must be considered. The time is important; the street location is important; the use of a street for commercial transactions is important; the number of such transactions is important; the place where the small items were kept by one of the sellers is important; the movements and manners of the parties are important. Considering the facts and circumstances in their totality, we conclude that the officers acted as prudent men in believing that some type of contraband was being sold. In this conclusion, we see no conflict with the result in *Henry,* which struck down an arrest after two citizens were seen on two occasions carrying cartons from residential premises to an automobile and driving away. The facts and circumstances known to the officers in *Henry* were outwardly innocent. The same conclusion is not warranted in this case.

It is difficult to isolate any one fact or circumstance and assign to it a given weight. If any one of the facts

and circumstances, which we have detailed, were missing, the necessary conclusion of probable cause might not be allowable. Every commercial transaction between citizens on a street corner when unidentified property is involved does not give rise to probable cause for an arrest. We only conclude that the total facts and circumstances in this case furnished a reasonable basis for the arrest.

In reaching the conclusion that the officers had probable cause for the arrests, we intentionally did not give any weight to the testimony of the police officers that the buyers in each of the three transactions were *known drug users*. Such bald allegations cannot be given any weight in determining the existence of probable cause. *Spinelli v. United States*, 393 U.S. 410, 21 L. Ed. 2d 637, 89 S. Ct. 584 (1969). In *Spinelli, supra*, the defendant was alleged to be a "known gambler." The allegation was considered a ". . . bald and unilluminating assertion of suspicion that is entitled to no weight. . . ." 393 U.S. at 414, 21 L. Ed. 2d at 643, 89 S. Ct. at 588.

The appellants also claim that the evidence was insufficient to sustain their convictions for dealing in narcotic drugs. They claim that there was no evidence that the small items transferred to the buyers contained heroin. Such a conclusion was, however, a permissible inference from the evidence that the wife appellant had heroin concealed on her person shortly after the arrest and the heroin was removed from her bosom area—the same area from which the small items were taken during the transactions. The heroin was found in a blue balloon and one officer testified that during the transactions the small items came from what appeared to be a dark sack. The appellants claim that the small items taken from the dark sack may not have been the same kind of items—heroin capsules—which were later found in the blue balloon. Such a *possibility*, however, does

not prevent a reasonable inference that the small items were exactly the same as the only kind of items later found in the blue balloon.

The husband appellant claims that since the heroin was not found on his person, he could not be convicted of possessing narcotic drugs. He relies on *Commonwealth v. Florida*, 441 Pa. 534, 272 A. 2d 476 (1971). In *Florida*, although contraband was found in the same room with the defendants, in an open jar and in an ashtray, there was no contraband found on the person of any of the appellants and no evidence from which it could be inferred that any of the appellants engaged in any transaction of any kind involving the contraband. In this case, the contraband was concealed by the wife on her person in the same place from which the officers observed items being taken for transfer to the husband and delivery to the buyers. In effect, facts were established from which it could be reasonably inferred that both the husband and the wife controlled and sold the drugs. Under these circumstances, the evidence was sufficient to sustain the husband's conviction for possessing narcotic drugs.

Appellants next claim that under the law husband and wife cannot be convicted of a conspiracy to do an unlawful act. It is true that certain courts have held that a husband and wife cannot be convicted of a conspiracy with each other, at least if no third person is involved in the conspiracy. Other jurisdictions hold that a husband and wife can be convicted of a conspiracy even if no other person is involved. *See* Annot., 46 A.L.R. 2d 1275 (1956).

Although the question presented has never been decided by this Court, it was considered under federal law in *United States v. Dege*, 364 U.S. 51, 4 L. Ed. 2d 1563, 80 S. Ct. 1589 (1960), which held that in the absence of any statutory exclusion there was no valid reason to hold that a husband and wife could not com-

mit a conspiracy just as any other two persons. **The** same conclusion was reached in *People v. Pierce,* **61 C.** 2d 879, 395 P. 2d 893 (1964).

Since in Pennsylvania, there exists no statutory provision prohibiting the conviction of a husband and wife for a conspiracy to do an unlawful act and there is no established judicial precedent, we think that the question should be decided in the light of considerations appropriate to the present day rather than considerations which were perhaps more appropriate a century or more ago.

Initially, it must be noted that in reality a husband and wife can conspire to commit a crime just as any other two persons might do. There is thus no question, and never has been, that spouses can engage in conduct which is necessary to support a conspiracy conviction. Rather, immunity was granted by some courts essentially because husband and wife were considered one person in law and were presumed to have but one will. Some authorities also speak of the natural state of a wife's submissiveness to her husband and conclude that because of such natural state the wife, lacking a will of her own, could not possibly formulate the necessary criminal intent to be guilty of conspiracy with her husband. There is no reason to perpetuate the fiction that husband and wife are one person with one will in the eyes of the law. They are not. They are separate individuals. Each has a distinct personality and a will which is not destroyed by any process of spousal fusion. Each acts separately and should be separately responsible for their conduct. We have so recognized in other areas of the law. Women should not lose their identity—or their responsibility—when they become wives. The status of wife or husband should not relieve any person of one's obligation to obey the law.

We agree with the conclusions expressed in *Dege, supra,* that it would be a "blind imitation of the past"

to presume that husband and wife are one rather than two persons.

"It would require us to disregard the vast changes in the status of woman—the extension of her rights and correlative duties—whereby a wife's legal submission to her husband has been wholly wiped out, not only in the English-speaking world generally but emphatically so in this country.

". . . It would be an idle parade of learning to document the statement that these common-law disabilities were extensively swept away in our different state of society, both by legislation and adjudication. . . ." 364 U.S. at 54, 4 L. Ed. 2d at 1565-66, 80 S. Ct. at 1591-92.

We note that this decision does not concern the evidentiary means by which a conspiracy between husband and wife may be proven. Different considerations and other statutory provisions determine the appropriate rules for testimonial compulsion as between spouses. *See Commonwealth v. Moore,* 453 Pa. 302, 309 A. 2d 569 (1973).

Judgments of sentence affirmed.

Mr. Chief Justice JONES, Mr. Justice EAGEN and Mr. Justice POMEROY concur in the result.