385 A.2d 1313

**COMMONWEALTH of Pennsylvania, Appellant,**

v.

**Gary A. GREBER and William R. Gullick, Appellees.**

Supreme Court of Pennsylvania.

Argued March 8, 1976.

Decided April 28, 1978.

64

Robert E. Colville, Dist. Atty., Charles W. Johns, Asst. Dist. Atty., Pittsburgh, for appellant.

John J. Dean, John H. Corbett, Jr., Pittsburgh, for appellee.

Before EAGEN, O'BRIEN, ROBERTS, POMEROY, NIX and MANDERINO, JJ.

## OPINION

MANDERINO, Justice.

Appellees, Greber and Gullick, were charged with several violations of the Controlled Substance, Drug, Device and Cosmetic Act, conspiracy, and corrupting the morals of a minor. Prior to trial, appellees sought to suppress certain physical evidence obtained by police at the time of, and subsequent to, their arrest. This is an appeal by the prosecution from an order of the trial court suppressing this physical evidence. The trial court held that the evidence was the product of an illegal search and seizure because appellees' arrest was not based on probable cause. The Superior Court affirmed, per curiam, *Commonwealth v. Greber,* 231 Pa.Super. 767, 331 A.2d 523 (1975). We granted appellant's petition for allowance of appeal, and this appeal followed. We affirm.

Following are the facts as stated by the trial court: "On February 28, 1974, Officer Dan Matuszak of the Mount Lebanon Police, took up a surveillance from a building whereby he could observe the area around Bowling City. This surveillance was conducted at approximately 10:00 p. m. The area was a high crime area. From a distance of several hundred feet Officer Matuszak viewed the entire parking area of the Bowling City parking lot with a pair of binoculars.

At approximately 10:20 p. m., Officer Matuszak noticed a juvenile standing at the front entrance to Bowling City itself. The juvenile made several trips to the parking lot as if he were looking for somebody. Each time he would return to the doorway.

Eventually, a Ford Mustang pulled into the parking lot. The juvenile approached the vehicle and talked for a moment. The vehicle then pulled to the corner of the building and the juvenile followed on foot. The juvenile then approached the passenger side and spoke with the occupants. A bag was handed out of the car. He held it up to his face as if to smell it. Thereafter, he placed it at his feet and pulled something out of his pocket that appeared to be either a billfold or a wallet. Officer Matuszak could see the flash of a bill or bills. However, on cross-examination Officer Matuszak stated that what he thought was a flash of bills by the juvenile could have been a credit card or a piece of paper, or it could have well been anything.

The juvenile then picked the bag up and proceeded to walk back toward the main entrance of Bowling City. Officer Matuszak testified that the activity of the juvenile in itself did not appear to be criminal. However, he stated that it was common action during a buy to sniff the merchandise before payment was made.

It was Officer Matuszak's testimony that he assumed a sale of narcotics had been made. He, thereafter, contacted a patrol car that was working the area. In a short time the patrol car operated by Officer McGinnis arrived on the scene. Officer McGinnis pulled his car in a position that blocked the vehicle in question. The defendants, Greber and Gullick, were in said vehicle.

Officer McGinnis testified that he received the police radio message from Officer Matuszak at approximately 10:38 p. m. He was told that a buy had been made in the parking lot. Of course, this was a mere assumption on the part of Officer Matuszak. He was also told that a juvenile received a bag from the automobile, smelled it, and walked away from the vehicle. Officer McGinnis was given a description of the vehicle in question and of the juvenile who took the bag. He was told that the juvenile had set the paper bag down.

When Officer McGinnis came to the parking lot he pulled directly in front of the vehicle in question. Thereafter, he asked the driver for his license and owner's card. Officer McGinnis then turned toward the juvenile who was walking towards him. He asked the juvenile to pick up his bag. The juvenile indicated that the bag was not his. At that point, Officer McGinnis retrieved the bag, opened it, and inside viewed a clear plastic bag containing marijuana." (Transcript citations omitted.)

The juvenile and appellees, Greber and Gullick, were placed under arrest. The vehicle was searched and then taken to the police garage. A search warrant was obtained, and pursuant to the warrant, the vehicle was again searched, this time more thoroughly. The search revealed a scale, and a half kilogram of suspected marijuana in the trunk of the car. Greber was also found to be carrying a vial containing a small amount of marijuana.

The prosecution contends that the tangible evidence should not have been suppressed. It concedes that the conduct of the police officer, prior to his search of the bag, was not justified on the basis of probable cause. The prosecution, however, would have us apply the rationale of *Terry v. Ohio,* 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968) to the circumstances in this case. We decline to do so.

The prosecution does not dispute that detaining appellees by blocking their automobile constituted a seizure within the meaning of the Fourth Amendment. Even if such an intrusion is not an arrest, as the prosecution argues, and if *Terry* is applicable, the seizure in this case does not meet the requirements of *Terry.* A stop for investigatory purposes is justified under *Terry* only if the "police officer observes *unusual conduct* which leads him reasonably to conclude in light of his experience *that criminal activity may be afoot . . .."* (Emphasis added.) *Terry, supra,* 392 U.S. 1 at 30, 88 S.Ct. at 1884, 20 L.Ed.2d 911. Even if we were to apply this rationale to the present case, the police conduct here would remain unlawful because the record satisfies us that these police officers did not observe any

unusual conduct. As correctly noted by the suppression court, the officer in question simply "assumed" that criminal conduct was occurring.

In *Commonwealth v. Lawson*, 454 Pa. 23, 29, 309 A.2d 391, 394 (1973), we stated that "[e]very commercial transaction between citizens on a street corner when unidentified property is involved does not give rise to probable cause for an arrest." This statement applies equally to this situation. The facts here do not give rise to a reasonable conclusion that criminal activity was afoot. Whether an officer should briefly detain a citizen for purposes of investigating suspected criminal activity will, of course, depend on the facts and circumstances of each case. *Commonwealth v. Jones*, 474 Pa. 363, 378 A.2d 835 (1977). The acts of appellees here—riding in a car, stopping at a bowling alley, exchanging a package—were all acts that were outwardly innocent. *Cf. United States v. Henry*, 361 U.S. 98, 103–104, 80 S.Ct. 168, 4 L.Ed.2d 134, 139–40 (1959). What occurred here was one isolated transaction, not a series of transactions which, under certain circumstances might indicate that an exchange of drugs was taking place. *See, Commonwealth v. Larson, supra.* Officer Matuszak had no prior information that a drug transaction would occur on this evening. There was simply no reasonable basis to conclude that this particular package, a shopping bag large enough to contain a countless number of objects, happened to contain illegal drugs. While the officer's curiosity might have been aroused by the action that was witnessed, and while he might have had a hunch that illegal contraband was involved, that is not sufficient. See *Terry v. Ohio. supra; Commonwealth v. Jones, supra.*

Order Affirmed.

JONES, former C. J., did not participate in the decision of this case.

ROBERTS, J., filed a concurring opinion.

EAGEN, C. J., and O'BRIEN, J., concurred in the result.

NIX, J., dissents.

ROBERTS, Justice, concurring.

I agree that the order of the suppression court suppressing physical evidence must be affirmed. The role of an appellate court in reviewing suppression orders is well-established. As stated by this Court in *Commonwealth v. Brown*, 473 Pa. 562, 566, 375 A.2d 1260, 1262 (1977):

> "When ruling on suppression motions, the suppression court is required to make findings of fact and conclusions of law as to whether evidence was obtained in violation of the defendant's constitutional rights. Pa.R.Crim.P. 323(i). The suppression court must determine whether the Commonwealth has established by a preponderance of the evidence that the challenged evidence is admissible. See Pa.R.Crim.P. 323(h). On review, our responsibility is 'to determine whether the record supports the factual findings of the court below and the legitimacy of the inferences and legal conclusions drawn from those findings.' *Commonwealth v. Goodwin*, 460 Pa. 516, 521, 333 A.2d 892, 895 (1975)."

See *Commonwealth v. Stafford*, 451 Pa. 95, 101, 301 A.2d 600, 604 (1973); *Commonwealth v. Sharpe*, 449 Pa. 35, 44, 296 A.2d 519, 524 (1972).

Here, the suppression court found that an arrest occurred when the officer positioned his vehicle so as to prevent movement of appellant's car. There is ample support in the record to support this finding. See *Commonwealth v. Bosurgi*, 411 Pa. 56, 68, 190 A.2d 304, 311 (1963). The suppression court further found that appellant's arrest was not based on probable cause. The Commonwealth agrees that probable cause to arrest did not exist at the time the police officer pulled directly in front of appellant's vehicle. Accordingly, the suppression court's conclusion that the evidence must be suppressed because the subsequent search followed an unlawful arrest is supported by the record and is not erroneous as a matter of law. Thus, we need not discuss the issue of whether the officer's search was justified under *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868 (1968) and its progeny.

The order of the suppression court suppressing the evidence must be affirmed.