941 A.2d 671

**COMMONWEALTH of Pennsylvania, Appellee,**

v.

**Nathan DUNLAP, Appellant.**

Supreme Court of Pennsylvania.

Argued April 17, 2007.

Decided Dec. 28, 2007.

148

Mark Patrick Cichowicz, Esq., Karl Baker, Esq., Defender Association of Philadelphia, for Nathan Dunlap.

Hugh J. Burns, Jr., Esq., Peter Carr, Philadelphia District Attorney's Office, for Commonwealth of Pennsylvania.

BEFORE: CAPPY, C.J., and CASTILLE, SAYLOR, EAKIN, BAER, BALDWIN and FITZGERALD, JJ.

### OPINION

Justice BALDWIN.

In this case, a trained police officer, working in what the officer termed a high-crime neighborhood, observed Appellant and another individual exchange currency for an unknown object without seeing any other suspicious activity. Shortly thereafter, Appellant was arrested and searched without a warrant. As it turned out, Appellant was in physical possession of crack-cocaine. He was thereafter charged with various narcotics-related offenses. Prior to trial, Appellant moved to suppress the seized narcotics. The motion was denied by the trial court and affirmed by the Superior Court, which found the observing officer's training and experience particularly relevant in determining that probable cause existed to support the seizure. We granted allocatur to determine whether the Superior Court's decision was inconsistent with our decision in *Commonwealth v. Banks*, 540 Pa. 453, 658 A.2d 752 (1995). We reaffirm *Banks* and hold that probable cause was lacking in the instant case, in violation of the Fourth Amendment to the United States Constitution. For the reasons explained in greater detail below, we reverse the conviction.

On May 4, 2001, Officer Devlin of the Philadelphia Police Department and his partner were conducting plainclothes surveillance at 2700 North Warnock Street in North Philadelphia, which is at the corner of Warnock and Somerset Streets. Officer Devlin watched as Nathan Dunlap (Appellant) ap-

proached another individual standing on that same corner. After approaching, Appellant engaged in a brief conversation with the other man, handed him money, and was, in return, handed "small objects." *Commonwealth v. Dunlap*, 846 A.2d 674, 675 (Pa.Super.2004). After Appellant walked away, Officer Devlin broadcasted Appellant's description over police radio. Officer Richard Stein apprehended Appellant a short distance from the Warnock and Somerset corner. A search of Appellant revealed three packets that contained crack-cocaine.

Officer Devlin testified that, at the time of the subject citizen-police encounter, he had been a police officer for almost five years. Further, he had been a member of the drug strike force for nine months. Officer Devlin testified that he had conducted "about fifteen to twenty" narcotics arrests in the general geographic area. According to him, North Warnock is a residential area that suffers from a high rate of nefarious activity, including drug crimes. Based on his experience and his characterization of the neighborhood, Officer Devlin believed that the transaction he witnessed involved illegal drugs.

Prior to trial, Appellant filed a motion to suppress the evidence, alleging that the police lacked probable cause to conduct the warrantless arrest and subsequent search. The trial court heard Officer Devlin's testimony. The court denied the motion. Immediately thereafter, Appellant was convicted of possession of a controlled substance in the Philadelphia Municipal Court. 35 P.S. § 780–113(a)(16). Appellant then petitioned for a writ of *certiorari* in the Court of Common Pleas of Philadelphia County, arguing that the Municipal Court erred in denying his motion to suppress. The Court of Common Pleas rejected Appellant's argument and affirmed the verdict and judgment of sentence. *Commonwealth v. Dunlap*, No. 01–913326, slip op. at 2–3 (Ct. of Com. Pleas of Philadelphia Cty. Jan. 2, 2002). Appellant timely appealed to the Superior Court. In a published opinion, the Superior Court, sitting *en banc*, affirmed in a five to four decision, finding that probable cause existed to support the warrantless arrest and subsequent search. *Dunlap*, 846 A.2d at 675.

Although the court acknowledged that this Court's decision in *Banks* held that "absent other factors, the mere fact that a regular police officer sees a transaction on the street in which money passes from one person to the other and some unknown objects are given in return does not amount to probable cause to arrest for a drug transaction, even where the suspect has fled on seeing the police," *Dunlap*, 846 A.2d at 675 (citing *Banks*, 540 Pa. at 455, 658 A.2d at 753), it found the instant facts distinguishable. The distinctions between the instant matter and *Banks* which the Superior Court noted were: (1) "an experienced narcotics officer makes the observations;" (2) "the transaction takes place in what the officer knows from personal, professional experience as well as reputation to be a high drug-crime area;" and (3) "based on his or her training, experience as an officer and knowledge of the area, the officer reasonably concludes that he or she probably witnessed a drug transaction." *Dunlap*, 846 A.2d at 675. Based on these "key differences," the majority concluded that probable cause existed to support the police action.

Judge Johnson, joined by three other judges, dissented, taking issue with the majority's use of police training and experience as a factor in determining the existence of probable cause. The dissent relied on *Commonwealth v. Lawson*, 454 Pa. 23, 309 A.2d 391 (1973), where this Court enunciated a non-exhaustive list of factors for courts to examine in assessing whether probable cause existed in situations where police observe a commercial street transaction of an unknown item. In the view of the dissenters, an officer's experience is not a factor to be included in the probable cause formula, but rather it serves only as a "lens through which to *view* [the *Lawson* ] factors." *Dunlap*, 846 A.2d at 679 (emphasis added). Indeed, the dissent would find that "the officer's experience governs the manner of examination called for by *Lawson*, but cannot *of itself* rise to probable cause. Thus, it is the totality of the circumstances, especially those six factors identified in *Lawson*, as *perceived* by an officer (not a layperson) that we must consider." *Id.* (emphasis in original). Utilizing this frame-

work, the dissent, citing *Banks*, would have found probable cause to be lacking.

■■■ We begin our discussion with the relevance of police training and experience to the probable cause determination. "To be constitutionally valid, an arrest must be based on probable cause." *Commonwealth v. Dickerson*, 468 Pa. 599, 605, 364 A.2d 677, 680 (1976); United States Const., Amend. IV.[1] The existence or non-existence of probable cause is determined by the totality of the circumstances. *Commonwealth v. Clark*, 558 Pa. 157, 164, 735 A.2d 1248, 1252 (1999) (citing *Illinois v. Gates*, 462 U.S. 213, 233, 103 S.Ct. 2317, 2329, 76 L.Ed.2d 527 (1983), and *Commonwealth v. Evans*, 546 Pa. 417, 422, 685 A.2d 535, 537 (1996) (Opinion Announcing the Judgment of the Court)). The totality of the circumstances test requires a Court to determine whether "the facts and circumstances which are within the knowledge of the officer at the time of the arrest, and of which he has reasonably trustworthy information, are sufficient to warrant a man of reasonable caution in the belief that the suspect has committed or is committing a crime." *Commonwealth v. Rodriguez*, 526 Pa. 268, 272–73, 585 A.2d 988, 990 (1991).

Our decision in *Lawson* is particularly important here as it set forth the relevant factors to be considered in situations such as the one presented in this case.[2] In that case, police officers observed Mr. Lawson and his wife standing on a street corner at 11:50 p.m. *Lawson*, 454 Pa. at 25, 309 A.2d at 392. They watched using binoculars, and at least one officer used high powered day and night binoculars. *Id.* at 25, 309

1. The Fourth Amendment provides:
   The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no warrants shall issue, but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

2. While *Lawson* was decided prior to *Gates* and our subsequent adoption of the totality of the circumstances test, we nonetheless applied a totality of the circumstances test to evaluate whether probable cause existed. *See Lawson, supra.* We have never overruled *Lawson*, and, while the case was decided over thirty years ago, it remains viable precedent.

A.2d at 393. The officers observed three separate transactions occur. In each transaction, a third person approached and handed money to Lawson. Lawson would then walk to his wife, who would retrieve a small sack from her bosom. Lawson's wife would then take a small item from the sack and hand it to Lawson, who would in turn hand it to the third person. *Id.* After observing the third transaction conducted in this manner, the police approached the Lawsons, who fled into a local bar where they were soon apprehended. *Id.* at 26, 309 A.2d at 393. In determining that probable cause existed to arrest the Lawsons, we indicated:

> All the detailed facts and circumstances must be considered. The time is important; the street location is important; the use of a street for commercial transactions is important; the number of such transactions is important; the place where small items were kept by one of the sellers is important; the movements and manners of the parties are important.

*Id.* at 28, 309 A.2d at 394. This list is not, nor did this Court ever intend it to be, exhaustive. Rather, it offers an illustration of the types of factors properly considered in assessing the existence of probable cause. Nonetheless, the absence of police training and experience from this list is notable.

Since *Lawson*, we have never formally recognized an officer's training and experience, *without more*, as a factor—in the *Lawson* sense—for purposes of the totality of the circumstances test. Instead, we have utilized officer training and experience as an aid in assessing the *Lawson* factors. As mentioned, we review probable cause pursuant to the totality of the circumstances test. In conjunction, we have long held that in applying this test to warrantless arrests, probable cause "... is to be *viewed* from the vantage point of a prudent, reasonable, cautious police officer on the scene at the time of the arrest *guided by his training and experience.*" *Commonwealth v. Norwood,* 456 Pa. 330, 334, 319 A.2d 908, 910 (1974) (emphasis added); *See also Clark,* 558 Pa. at 165, 735 A.2d at 1252; *Banks,* 540 Pa. at 458, 658 A.2d at 754; and *Evans,* 546 Pa. at 423, 685 A.2d at 535. Thus, we hold that police training and experience, *without more,* is not a fact to

be added to the quantum of evidence to determine if probable cause exists, but rather a "lens" through which courts view the quantum of evidence observed at the scene. We do not seek to minimize the experience gained through years serving on the police force. Quite to the contrary, we recognize that many officers, particularly those with specialized training, are able to recognize trends and methods in the commission of various crimes. For instance, an officer who has specialized in drug crimes may be more suspicious that a package contains illegal narcotics because of the form of packaging used to conceal those drugs. *See Evans, infra.* He or she may recognize criminal activity where a non-police citizen may not. However, a court cannot simply conclude that probable cause existed based upon nothing more than the number of years an officer has spent on the force. Rather, the officer must demonstrate a nexus between his experience and the search, arrest, or seizure of evidence. By doing so, a court aware of, informed by, and viewing the evidence as the officer in question, aided in assessing his observations by his experience, may properly conclude that probable cause existed. This is true even where the court may have been unable to perceive the existence of probable cause had the court viewed the same evidence through the eyes of a reasonable citizen untrained in law enforcement.

For instance, in *Evans,* we found the investigating officer's experience particularly relevant in upholding a warrantless arrest. The officer there signaled Evans to pull his vehicle to the side of the road. Rather than doing so, Evans attempted to pull away, an effort that was thwarted when the officer blocked the vehicle with his police cruiser. Evans then exited his vehicle and walked towards the back of it. The officer approached and ordered Evans to produce some identification and registration for the vehicle. Evans moved back towards the front of the car in a suspicious manner, causing the officer to follow him. At this point, the officer looked over Evans' shoulder and observed an object protruding from under the driver's seat, which the officer believed to contain narcotics. The object was packaged in a way that the officer knew to be

common in drug trafficking. The officer's belief was based on his thirteen years of experience and approximately fifty observations of narcotics being bundled in a similar manner. *Evans*, 546 Pa. at 420–21, 685 A.2d 535.

In *Evans*, Justice Cappy, now Chief Justice, in this Opinion Announcing the Judgment of the Court, would have ruled that probable cause existed to seize the package. Justice Cappy's opinion explained that the officer's experience was relevant to the probable cause determination. However, it was the officer's experience in identifying commonly used forms of narcotics packaging that was relevant, not simply that he was on the force for thirteen years. *Id.* at 426, 685 A.2d at 539. This finding of the nexus between facts observed and officer experience, is in accord with the holding we announce today. In the *Evans* Opinion Announcing the Judgment of the Court, probable cause existed, not simply because an officer with thirteen years of experience made the arrest, as the Superior Court in effect held in the case *sub judice*. Rather, it was due to the officer's thirteen years of experience that he could identify that drugs were packaged in such a manner and that is what was important. In other words, the officer's experience informed the officer's conclusion that the packaging in question was indicative of illegal drug trafficking, the crime suspected.

To be clear, we hold that, in reviewing probable cause, a police officer's training and experience is not a probable cause factor in the *Lawson* sense. If that were the case, the concept of probable cause as a constitutional barrier between the privacy of the citizen and unwarranted governmental intrusions would be undermined by an officer's ability to bootstrap a hunch based on constitutionally insufficient objective evidence simply by adverting to his experience as the foundation of his suspicion. While probable cause is a fluid concept, and requires only a showing that criminal activity *may* be reasonably inferred from a set of circumstances and need not be shown to, in fact, exist, *Commonwealth v. Weidenmoyer*, 518 Pa. 2, 13, 539 A.2d 1291, 1297 (1988), we must nonetheless remain true to its purposes, one of which is protecting citizens from arbitrary police intrusions. If we were to conclude that

a police officer's experience was a factor to be added to *every* probable cause determination, rather than serve as a lens through which to view the facts, then every time an experienced officer begins a shift, probable cause begins to be assessed against all citizens every time they fall under the watchful eye of a suspicious officer who has been on the job for a meaningful period of time. The danger of this, of course, is the potential for innocent citizens being unlawfully seized and/or searched, i.e., being searched or seized with less than probable cause.

For these reasons, we conclude that the Superior Court erred in this case by adding Officer Devlin's training and experience, as though it were a stand-alone factor, to the tally prescribed by *Lawson.* For the reasons that follow, and in light of our cases in this area, we are compelled to conclude that probable cause did not exist to support the warrantless arrest here, even viewing the facts and circumstances through the eyes of a trained officer. Thus, we find that the arrest and subsequent search of Appellant was unconstitutional.

██ We begin by reaffirming the premise that "every commercial transaction between citizens on a street corner when unidentified property is involved does not give rise to probable cause...." *Lawson,* 454 Pa. at 29, 309 A.2d at 394. First, we find that this case is immediately distinguishable from *Lawson.* In that case, officers observed three separate transactions. In each transaction, a random individual would approach Lawson and hand him currency. Lawson would then retreat to where his wife was located and retrieve an object, which he would then hand to the purchaser. *Id.* at 25–26, 309 A.2d at 392–93. After observing the multiple transactions, the officers became suspicious and approached the Lawsons. They, undoubtedly fearing apprehension, fled into a local bar. *Id.* In the case at bar, Officer Devlin observed only a single transaction, not multiple, complex transactions like in *Lawson.* Additionally, Appellant made no attempt to flee upon police intervention as Lawson and his wife did.

This case is more analogous to *Banks* than it is to *Lawson.* In *Banks,* a marked police unit observed Banks standing on a Philadelphia street corner. As an unknown female approached, Banks reached into his pocket and retrieved an unknown object and handed it to the female. She, in turn, handed cash to Banks. As the police car approached, Banks fled but was apprehended very shortly thereafter. Banks was searched resulting in the recovery of cocaine. *Banks,* 540 Pa. at 454, 658 A.2d at 752.

We expressly noted that *Banks* was not a case where "a trained narcotics officer observed either drugs or containers commonly known to hold drugs being exchanged," where "police observed multiple, complex, suspicious transactions," or where a "police officer was responding to a citizen's complaint or to an informant's tip." *Id.* (citations omitted). Rather, the case consisted simply of a commercial street transaction of an unknown object between citizens, coupled with flight.

After acknowledging that flight alone was insufficient to constitute probable cause, *see Commonwealth v. Jeffries,* 454 Pa. 320, 311 A.2d 914 (1973), we nonetheless recognized that flight coupled with additional facts may establish sufficient probable cause. However, we held that *Banks* was not such a case:

[T]he additional factors here do not by themselves "point to guilt." We find that mere police observation of an exchange of an unidentified item or items on a public street corner for cash (which alone does not establish probable cause) cannot be added to, or melded with the fact that flight (which alone does not establish probable cause to arrest) to constitute probable cause to arrest. Such facts, even when considered together, *fall narrowly short* of establishing probable cause.

*Banks,* 540 Pa. at 456, 658 A.2d at 753 (emphasis added).

Similarly, this Court's non-precedential but nonetheless persuasive decision in *Commonwealth v. Greber,* 478 Pa. 63, 385 A.2d 1313 (1978) (Opinion Announcing the Judgment of the Court), supports reversal. In *Greber,* an officer set up surveil-

lance from a building where he could observe the parking lot of a bowling alley in Mt. Lebanon, Pennsylvania. The officer characterized this neighborhood as a "high crime area." *Greber*, 478 Pa. at 65, 385 A.2d at 1315. Around 10:20 p.m., the officer observed a juvenile making several trips to the parking lot of the bowling alley. Eventually, a car entered the lot and was approached by the juvenile. An occupant of the car handed a bag out of the window to the juvenile, who promptly smelled the bag and placed it at his feet. He pulled out what appeared to be a wallet. The officer testified that at that point he could see the flash of a bill or bills. The juvenile retrieved the bag from his feet and headed back towards the entrance to the bowling alley. *Id.* at 66, 385 A.2d at 1315.

In *Greber*, the officer admitted that the juvenile's activity did not appear to be criminal. However, he noted that it was common for drug purchasers to sniff the items during the sale. He testified that he assumed that a drug sale had just occurred. Shortly thereafter, the juvenile and the occupants of the vehicle were arrested. Marijuana was found in the bag that was handed to the juvenile. A search warrant was obtained for the car, which revealed a scale and half of a kilogram of marijuana. *Id.* at 67, 385 A.2d at 1315–16.

The Commonwealth conceded that probable cause was lacking, but contended that the evidence was nonetheless admissible under a *Terry* stop [3] analysis as the officer had reasonable suspicion that criminal activity was afoot. This Court agreed that probable cause was lacking under the Fourth Amendment, but also rejected the Commonwealth's reasonable suspicion argument. We cited the *Lawson* principle that every commercial transaction between citizens does not give rise to

---

**3.** *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). We recognize that the *Greber* decision was focused primarily on reasonable suspicion, rather than probable cause and that the lead analysis did not garner a majority. The disagreement among the members of this Court centered on whether reasonable suspicion existed to believe that a street drug transaction was occurring. The Commonwealth conceded, and this Court easily concluded, that probable cause, a higher legal standard than reasonable suspicion, was absent. As such, we find *Greber* persuasive on the instant probable cause determination in the street drug transaction scenario.

probable cause, and held that it applied to the case even though the Court was reviewing the facts for reasonable suspicion. The facts, we held, were different from *Lawson* because what occurred was "one isolated transaction, not a series of transactions which, under certain circumstances might indicate that an exchange of drugs was taking place." *Greber,* 478 Pa. at 68, 385 A.2d at 1316. Further, we found it critical that the officer had no prior information that a drug transaction was about to occur. The officer's observations amounted to nothing more than a hunch that illegal activity was taking place, which does not rise to the level of probable cause or reasonable suspicion that criminal activity was afoot. *Id.*

The search at issue here meets the same ineluctable fate as those in *Banks* and *Greber:* the evidence must be suppressed and the conviction reversed. Here, Officer Devlin observed a single, isolated transaction. The transaction occurred in what Officer Devlin claimed was a high crime area, a *Lawson* factor, which in and of itself does not give rise to probable cause. Based on this limited information, the officer's actions were based only on mere suspicion, not probable cause. It is well-settled that mere suspicion alone will not support a finding of probable cause. *Commonwealth v. Kelly,* 487 Pa. 174, 178, 409 A.2d 21, 23 (1979). This is not a case where the officer had prior reason to expect that Appellant was involved in drug activity or was tipped off by an informant that a drug transaction was set to occur. The officer observed nothing that he could identify as narcotics, or even narcotics paraphernalia. Moreover, in *Banks,* we found that a similar transaction fell narrowly short of probable cause, even coupled with flight. In this case, Appellant did not even attempt to flee. Accordingly, if probable cause was absent in *Banks* with flight, it must certainly be absent here as well.

Even as we view the circumstances from the perspective of a reasonable, experienced police officer, as we must for the reasons detailed above, probable cause remains absent. Be-

cause there was no probable cause to arrest and search Appellant, we reverse.[4]

Chief Justice CAPPY and Justice BAER and FITZGERALD join the opinion.

Justice SAYLOR files a concurring opinion in which Chief Justice CAPPY and Justice FITZGERALD join.

Justice CASTILLE files a dissenting opinion.

Justice EAKIN files a dissenting opinion.

Justice SAYLOR, concurring.

Like Mr. Justice Eakin, I believe that a police officer's experience may fairly be regarded as a relevant factor in determining probable cause. However, although I recognize that reasonable minds may differ concerning outcomes, the majority appropriately develops that this Court has not been comfortable with a general rule crediting an aggregation of a few circumstances that, independently and collectively, are also consistent with legitimate behavior. Rather, in determining probable cause, the Court has generally looked for the presence of some factor more distinctly associated with the criminal offense or offenses under observation or investigation to elevate reasonable suspicion to the necessary reasonable belief. *See, e.g., Commonwealth v. Banks*, 540 Pa. 453, 455, 658 A.2d 752, 753 (1995) (delineating, among circumstances that are sufficient to support a determination of probable cause, observation by a trained narcotics officer of drugs or containers commonly known to hold drugs being exchanged, "multiple, complex, suspicious transactions," and response to a reliable tip). Presently, I believe that the majority appropriately upholds *Banks*, as it represents a legitimate and reasoned effort to implement the compromise embodied in the probable cause standard between safeguarding citizens from

4. Because we reverse this case in favor of the Appellant, we need not reach the other issue presented in his appeal, which is whether this Court's *per curiam* decisions reversing orders denying suppression motions, where *Banks* is cited as the basis for reversal, have precedential value.

undue interference with their constitutionally-protected liberty and privacy interests, and the affordance of fair leeway to the government in its enforcement of the law and protection of our communities. *See Brinegar v. United States,* 338 U.S. 160, 176, 69 S.Ct. 1302, 1311, 93 L.Ed. 1879 (1949).

I also agree with the majority's position that a colorable argument that the experience of a police officer should be credited as a relevant factor in the probable cause setting requires more than a cursory assertion of its existence and relevance. Professor LaFave provides the following explanation, which I find persuasive:

> [T]he probable cause determination must ultimately be made by a judicial officer, who is not an expert in matters of law enforcement, and ... consequently it is incumbent upon the arresting or searching officer to explain the nature of his expertise or experience and how it bears upon the facts which prompted the officer to arrest or search. For example, if an officer at a hearing on a motion to suppress were to say that he made the arrest because he saw what he as an expert recognized as a marijuana cigarette, this is not a showing of probable cause. Under the probable cause standard, it must be possible to explain and justify the arrest to an objective third party, and this is not accomplished by a general claim of expertise. On the other hand, if the officer testifies fully concerning his prior experience with marijuana cigarettes and explains in detail just how it is possible to distinguish such a cigarette from other hand-rolled cigarettes, this testimony cannot be disregarded by the judge simply because it involves expertise not shared by the judge.

WAYNE R. LAFAVE, 2 SEARCH AND SEIZURE § 3.2(c), at 44–45 (4th ed.2004) (footnotes and internal quotation marks omitted).

Here, there is little foundation of record to support reliance on the experience factor to advance the objective, judicial inquiry in this matter. The following passage from the very brief direct testimony of Officer Devlin at the suppression hearing encompasses the record development of the experience factor:

Q. Officer Devlin, as of [the date of Appellant's arrest], how long had you been a police officer?

A. Almost five years. Just shy of five years.

Q. And how long had you worked for the [narcotics] strike force?

A. About nine months.

Q. The vicinity of 2700 North Warnock Street[, where Appellant was first observed], could you classify that?

A. It's a high drug and crime area, residential.

Q. Approximately how many narcotics arrests have you been a part of in that area?

A. As of that date?

Q. Yes.

A. About fifteen or twenty.

Q. You just classified that area as residential, are there any vendors in that area, any stores?

A. Not vendors. It's row homes, brick row homes.

Q. What did you believe you were observing on that day?

A. A narcotics transaction.

Notes of Testimony, August 16, 2001.

Aside from the specific location within the City, which is discussed below, this testimony does not offer an indication of anything about the exchange in which Appellant was involved that, by reference to knowledge gained from specialized training and experience, would inform the judicial assessment of whether it could be sufficiently distinguished from a legitimate one (for example, making change for a dollar) to support the ripening of reasonable suspicion into probable cause. Without further development, the mere fact that the arresting officer could attest to training and experience with prior drug arrests seems to me to add very little to the circumstances that were before the Court in *Banks*. *Accord* WILLIAM E. RINGEL, 2 SEARCHES AND SEIZURES, ARRESTS AND CONFESSIONS § 23:8 (2004) ("Even in the presence of a trained officer . . . gestures and motions commonly associated with drug use may also be so well associated with innocent activities that they do not

suffice to establish probable cause."). Indeed, I believe that very little would be left of *Banks* if references to training and experience abstract from an explanation of their specific application to the circumstances at hand would be deemed sufficient to overcome its holding.

In addition, with respect to the alleged high incidence of drug activity in the location of the arrest, a number of courts have been similarly circumspect concerning the degree of weight that should be attributed to the location of conduct in a high-crime venue in the probable cause assessment, particularly in light of the socioeconomic connotations that may accompany (or be attributed to) such judgments. *See, e.g., United States v. Davis,* 458 F.2d 819 (D.C.Cir.1972) ("A delicate balance must be struck between the right of the often-victimized innocent ghetto inhabitant to adequate, unhampered police protection and the rights guaranteed to him under the Fourth Amendment."). Concerning this factor, Professor La-Fave has suggested that due recognition can be afforded to it, while appropriate perspective is maintained, by "cautiously using the crime problem in the area only to give meaning to highly suspicious facts and circumstances." *See* 2 LaFave, Search and Seizure § 3.6(g), at 369. I am in accord with this observation. Thus, in the absence of some particular circumstance that does not substantially overlap with legitimate behavior, I do not believe that the high-drug-activity location factor should be given the sort of weight which would tip the totality scales in favor of finding probable cause to arrest.

Unless and until disavowed by the United States Supreme Court, I regard *Banks* as a reasoned effort on the part of the Court to strike the necessary balance and, as noted, I join the majority in affording it due effect in the present case.

Chief Justice CAPPY and Justice FITZGERALD join this concurring opinion.

Justice CASTILLE, dissenting.

I respectfully dissent.

The issue accepted for review involves the application of *Commonwealth v. Banks*, 540 Pa. 453, 658 A.2d 752 (1995), a case I continue to believe was wrongly decided, as is ably explained in the reasoned dissent penned by my colleague Mr. Justice Eakin, which I join. As I noted in my *Banks* dissent, "[w]hile a single surreptitious 'commercial transaction' may not give rise to probable cause, and while flight alone does not give rise to probable cause, the totality of those circumstances surely does, especially when the flight following a transaction consistent with an illicit drug sale, is unprovoked by any actions of the police other than their 'mere presence.'" *Id.* at 754 (Castille, J. dissenting) (citations omitted). For present purposes, however, I accept that *Banks* is a governing Fourth Amendment precedent of this Court. I respectfully dissent in this case because I believe that the courts below properly applied our precedent.

*Banks* did not exhaust the variety of circumstances that attend street drug sales. This case is identical to *Banks* in that it involves the common, surreptitious exchange paradigm, but it is different in other material respects. Weighing against probable cause is the absence of flight. The factors weighing in favor of probable cause here, which were absent in *Banks,* include the fact of the officer's training in narcotics investigation, his hands-on experience, which included his experience in this very neighborhood, and the high volume of drug dealing in this particular neighborhood. In my view, even accepting *Banks'* unwisely hostile rule, these factors justified the suppression judge in concluding that the experienced police officer here acted upon probable cause.

We observed in *Banks* that, "movement of an unknown item, or the mere exchange of an unknown item or items, plus flight, with nothing more, does not establish probable cause to arrest under the Fourth Amendment." *Id.* at 753–54. We emphasized that those facts fell "narrowly short." *Id.* Here, the Majority, adopting the Superior Court dissent below, recharacterizes the additional factors of the specific police officer training and experience as a mere "lens" through which to view other factors, rather than as factors in the analysis in

and of themselves. I confess that I do not understand the distinction. Indeed, the value of importing concepts from optometry escapes me. Moreover, this sort of post-New Age speak is contrary to the manner in which the law generally treats those with special expertise. When a doctor testifies as an expert witness in a medical malpractice action, he is not providing a "lens" by which to view his conclusions: he is offering relevant testimony that may be accepted for its factual truth. The U.S. Supreme Court—the final word on Fourth Amendment matters—has never embraced the "lens" theory of probable cause review. I would squarely reject it.

Metaphors are unnecessary to properly decide the rather prosaic probable cause issue here. The issue posed in the *Banks* line of cases concerns the *practical application* of the probable cause requirement in a common scenario involving street-level drug dealing. To declare that the Majority feels practical police experience is only a "lens" through which to view probable cause factors provides no useful guidance to reviewing courts or police officers. Stating that an officer's training and experience are a "lens" does not provide an analytical framework so much as a Rorschach test. How, and to what extent, the courts are to consider the "lens of experience" in reviewing an officer's conduct remains open to infinite permutations. The Commonwealth entrusts the protection of the public to police officers, and to ensure that they discharge their duty effectively, and fairly, provides them with specialized training, which is further enhanced by their on-the-job experience. Judges enhance their basic training in their field of expertise the same way.

What should be preeminent is that the U.S. Supreme Court does not share the Majority's view on the relevance of high crime locations and an officer's experience in the probable cause equation. That Court has long recognized that crime problems common in the location at issue, and of which police are aware, are an important factor in determining whether probable cause exists. *E.g. United States v. Brignoni–Ponce*, 422 U.S. 873, 884–85, 95 S.Ct. 2574, 45 L.Ed.2d 607 (1975); *Brinegar v. United States*, 338 U.S. 160, 167–69, 69 S.Ct. 1302,

93 L.Ed. 1879 (1949); *Carroll v. United States,* 267 U.S. 132, 160, 45 S.Ct. 280, 69 L.Ed. 543 (1925). *Accord Commonwealth v. Zhahir,* 561 Pa. 545, 751 A.2d 1153, 1157 (2000). Further, the High Court has recognized the relevance of the expertise and experience of police officers. *United States v. Cortez,* 449 U.S. 411, 418, 101 S.Ct. 690, 66 L.Ed.2d 621 (1981) (police may rely on their training and experience to draw "inferences and make deductions ... that might well elude an untrained person"). *See also United States v. Montoya de Hernandez,* 473 U.S. 531, 542–43, 105 S.Ct. 3304, 87 L.Ed.2d 381 (1985); *United States v. Ortiz,* 422 U.S. 891, 897, 95 S.Ct. 2585, 45 L.Ed.2d 623 (1975); *Brignoni–Ponce,* 422 U.S. at 885, 95 S.Ct. 2574; *Terry v. Ohio,* 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). *Accord Commonwealth v. Norwood,* 456 Pa. 330, 319 A.2d 908, 910 (1974). These precedents are the equivalent of the large "E" on the diagnostic eye chart. The Majority's preference for optometric metaphor leads to probable cause blindness.[1]

The Majority's statement that this Court has never considered an officer's training and experience to be a relevant factor, "without more," in the probable cause analysis means little. Maj. Op. at 153, 941 A.2d at 675. In a totality analysis, most factors, standing alone, will not satisfy the governing test. The proper analysis of probable cause looks for all relevant factors, in their totality. The officer here testified that he had personally made between 15 and 20 drug arrests in this area. He knew from his experience that the neighborhood was one plagued by a high number of drug crimes; intelligent policing, of course, targets high crime areas. The officer's relevant experience, to which he testified, well positioned him to understand the significance of appellant's conduct. That conduct led him to conclude that this surreptitious transaction on this notorious street corner was likely to involve the sale of drugs. That, of course, is the single most likely explanation. Police are not required to distort the lens

---

1. The Majority fails to cite or discuss a single case from the U.S. Supreme Court respecting probable cause, notwithstanding the centrality of such precedent to the Commonwealth's presentation.

of their practical experience and discount the probable in favor of the fanciful. The U.S. Supreme Court has often explained probable cause in terms of what it does not require—*i.e.,* it requires less than a showing that the officer's belief is factually correct, *e.g., Illinois v. Rodriguez,* 497 U.S. 177, 185–86, 110 S.Ct. 2793, 111 L.Ed.2d 148 (1990), or even "more likely true than false," *Texas v. Brown,* 460 U.S. 730, 742, 103 S.Ct. 1535, 75 L.Ed.2d 502 (1983). This Court has recognized the same essential point. Indeed, in *Commonwealth v. Lawson,* upon which the Majority places so much reliance, we articulated the test as "whether law enforcement officers have acted arbitrarily or have acted on the basis of probable cause." 309 A.2d at 394. There was nothing arbitrary in the police conduct here. I would affirm the courts below, which properly applied *Banks.*[2]

Today's decision provides no useful standard for the courts. It provides even less to the police officers who witness surreptitious transactions in high-crime areas. Standards under the Fourth Amendment should be "workable for application by rank and file, trained police officers," "reasonable," and "objective." *Illinois v. Andreas,* 463 U.S. 765, 772–73, 103 S.Ct.

**2.** As the Superior Court majority, per Judge Klein, aptly noted below:

In this case, there are two significant ... factors. First, the testimony came from an experienced officer *who had been on the drug strike force for nine months.* Second, the transaction took place in a high drug area in which [the officer] *himself* had participated in fifteen to twenty drug arrests. These facts are similar to those found in *[Commonwealth v.] Nobalez,* [805 A.2d 598 (Pa.Super.2002) *appeal denied* 575 Pa. 692, 835 A.2d 709 (2003)] where we also found that the arresting officer possessed probable cause in light of his personal knowledge and professional experience.

We think the judges below reasonably rejected the alternative that this was merely a person giving change or making a sale of cigarettes or M & M's or something equally innocuous. The municipal court judge, who had the opportunity to observe the witnesses and judge all of the circumstances, and the common pleas court judge, who affirmed the municipal court judge's decision, both held that there was probable cause to believe there was a drug transaction. While recognizing that this is a close case, it was well within the municipal court judge's discretion to draw the conclusion that in this neighborhood, with these observations, and considering the experience of the police officer, the officers had probable cause to believe that a drug transaction was being carried out.

*Commonwealth v. Dunlap,* 846 A.2d 674, 677 (Pa.Super.2004) (emphasis in original) (citations omitted).

3319, 77 L.Ed.2d 1003 (1983). In the wake of today's decision, officers on the street will now be left to guess the magic number of drug arrests before their observations will be deemed sufficiently supported by experience to allow the relevant factors to give rise to probable cause. And, in the interim, the criminally-oppressed good citizens living in these neighborhoods will be consigned to a Court-ordered state of helplessness.

A further difficulty in the Majority's approach is its failure to appreciate just how reasonable and non-arbitrary the limited police response is in a case such as this. Because the central command of the Fourth Amendment is reasonableness, the restraints that courts impose on police should account for the practical realities of law enforcement. *Atwater v. City of Lago Vista*, 532 U.S. 318, 347, 121 S.Ct. 1536, 149 L.Ed.2d 549 (2001) ("Often enough, the Fourth Amendment has to be applied on the spur (and in the heat) of the moment, and the object in implementing its command of reasonableness is to draw standards sufficiently clear and simple to be applied with a fair prospect of surviving judicial second-guessing months and years after an arrest or search is made."); *New Jersey v. T.L.O.*, 469 U.S. 325, 338, 340–41, 105 S.Ct. 733, 83 L.Ed.2d 720 (1985) (fundamental command of Fourth Amendment is reasonableness). The police officer here did nothing unreasonable. An apprehension following a street drug sale does not lend itself to the traditional "intermediate response" of a stop and frisk for weapons. A weapons frisk is of no avail when the object being sought is not a weapon, but a tiny vial or packet of drugs, or drug transaction proceeds. To conclusively confirm or dispel a reasonable belief that a suspect was dealing illegal narcotics, police need to see the goods. That is all the officer did in this case. The search was targeted and minimally intrusive. Such a limited search immediately confirms or dispels suspicion. The Fourth Amendment admits a more flexible analysis.

Finally, the Majority acknowledges, but elects not to decide, the second issue accepted for review, an overarching jurisprudential issue concerning the precedential effect of the *per*

*curiam* reversals which were entered by this Court in the wake of *Banks.* I would reach that question and make entirely clear that a *per curiam* decision, while "certainly binding as the law of that case, by definition ... establishes no precedent beyond the authority cited in the order." *Commonwealth v. Smith,* 575 Pa. 203, 836 A.2d 5, 17 (2003). I would reject appellant's inaccurate claim that the post-*Banks per curiam* reversals "must mean something in terms of an instructive, and therefore precedential, nature" because the argument both ignores *Smith* and erroneously conflates "instructive" with "precedent." The Superior Court majority below properly enforced our precedent in this case, and it should be affirmed.

I respectfully dissent.

Justice EAKIN, dissenting.

I respectfully dissent from the majority's conclusion "a police officer's training and experience is not a probable cause factor...." Majority Op., at 155, 941 A.2d at 676. To the contrary, if included in the affidavit, relevant training and experience *is* properly considered "a probable cause factor."

My dissent arises from the questionable logic and merit of the oft-cited *Banks*[1] decision. In my view, a single surreptitious transaction witnessed by a trained police officer may indeed give rise to probable cause. To say every street corner transaction creates probable cause is of course not possible, but just as untenable is the statement that a surreptitious exchange witnessed by a trained police officer can never be enough. Indeed, if proper education and training allows a witness to offer an expert opinion in court, *a fortiori* it should be permissible in a common sense evaluation of probable cause. This decision must depend, as does every probable cause review, on the totality of the circumstances, *see Illinois v. Gates,* 462 U.S. 213, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983), yet the pronouncement in *Banks* is continually considered to

---

1. *Commonwealth v. Banks,* 540 Pa. 453, 658 A.2d 752 (1995).

mean the watching of a single transaction cannot be enough, no matter what.

Where police observe surreptitious street corner transactions, a drug sale is often, if not always, the most plausible explanation of the exchange. While an innocent explanation is certainly possible, we are not talking about certainties, but probabilities, and only probabilities that are reasonable. I have yet to come across an innocent explanation of such conduct in a brief or argument in any similar case that is arguably likely, much less equally probable. If a drug transaction is the most likely explanation, why should this Court permit continuation of the formulaic fiction that one transaction can never comprise probable cause? In this regard I believe *Banks,* which I acknowledge remains the prevailing precedent, was wrongly decided and overbroad, and ought to be revisited.