# Commonwealth v. Martellacci

*Christina Stephanos, assistant district attorney,* for Commonwealth.

*Christa S. Dunleavy, deputy public defender,* for defendant.

CEPPARULO, *J.,* April 9, 2008—

## INTRODUCTION

On January 29, 2008, following the denial of his motion to suppress physical evidence and statements, defendant was convicted of possession of a controlled substance with intent to deliver[1] and possession of drug paraphernalia.[2] Defendant was sentenced to a three-year period of probation and from that judgment of sentence, defendant has now appealed. This opinion is filed pursuant to Pennsylvania Rule of Appellate Procedure 1925(a).

## FACTUAL AND PROCEDURAL BACKGROUND

On January 30, 2007, defendant entered the parking lot of the Knights Inn, in Bensalem Township, Bucks County, Pennsylvania. Notes of Testimony, 1/29/2008 (N.T.), pp. 5, 22. The Knights Inn is in a high crime area, well-known for drug trafficking. N.T., pp. 22-23. At the time defendant entered the parking lot, Officer David Clee, an undercover police officer was patrolling the area in an unmarked vehicle. N.T., pp. 22-23. Officer Clee's training and experience includes 400 hours of narcotics

---

1. 35 Pa.C.S. §780-113(a)(30).
2. 35 Pa.C.S. §780-113(a)(32).

training specifically related to drug dealing, eight years handling a narcotics canine, and six years with the Bensalem Township Special Investigations Unit. N.T., p. 21. During his time with that unit approximately 1,500 drug arrests were made. N.T., p. 22. While on patrol, Officer Clee observed defendant complete what he believed was a drug sale.

Specifically, Officer Clee observed defendant drive slowly through the Knights Inn parking lot searching for a room. This area of Bensalem Township contains numerous hotels and motels which are commonly used for narcotics trafficking and use. N.T., p. 23. The Knights Inn is located in the center of this area and Officer Clee, alone, has investigated thousands of drug cases just in that motel. N.T., p. 24. While cruising in the parking lot, Officer Clee observed the defendant drive up and down the aisles looking at hotel room doors without first going to the lobby. N.T., p. 24. The manner of defendant's actions were, in Officer Clee's opinion, consistent with behavior often associated with people searching for a prostitute or dealing drugs. N.T., p. 24; see also, exhibit C-4, p. 2 (application for search warrant). Officer Clee watched as defendant stopped in front of room 209 and honked his horn. N.T., p. 25. A woman exited the room and entered the vehicle. N.T., p. 25. Officer Clee observed defendant reach into the roof of his vehicle and pass an object to the woman; the woman then passed an item back to the defendant. N.T., p. 26; see also, exhibit C-4, p. 2. The woman was in defendant's vehicle for about 45 seconds before she exited, placed an object in her pocket, and returned to room 209. N.T., p. 26; see also, exhibit C-4, p. 2.

Officer Clee followed defendant out of the parking lot, and radioed to have a uniformed officer in a marked patrol vehicle conduct a traffic stop of defendant's vehicle. N.T., pp. 27-28. Officer Cornish, another police officer with Bensalem Township, stopped defendant's vehicle approximately a mile and a half from the Knights Inn. N.T., p. 28. Officer Clee arrived at the scene as Officer Cornish executed the stop. N.T., p. 28. At that time, Officer Clee observed defendant reaching under the passenger seat and toward the dashboard of his vehicle. N.T., pp. 57-58. Defendant was subsequently asked to step from his vehicle. N.T., pp. 28-29. At this point, Officer Clee observed what appeared to be "Chore Boy", a cleaning product often associated with drug use, scattered throughout the entire vehicle. N.T., pp. 41, 56.

As defendant's vehicle was being pulled over Officer Clee observed defendant reaching inside the vehicle, under the passenger seat and near the glove box. N.T., pp. 56-57. At that point Officer Clee did not know if the defendant would be detained or returned to the vehicle and the defendant was asked, therefore, to exit the vehicle while Officer Clee searched the area in the car to insure there were no weapons inside. N.T., p. 57. As defendant exited the vehicle, Officer Clee had a brief conversation with him, wherein defendant indicated he was coming from Philadelphia traffic court and heading to Frankford Hospital to see his girlfriend and new baby. N.T., p. 29; exhibit C-4, p. 2. Officer Clee knew that had defendant taken a direct route from traffic court to the hospital he would not have passed the Knights Inn in Bensalem Township. N.T., p. 29. Officer Clee asked defendant to explain himself and defendant gave an

explanation which omitted any mention of entering the Knights Inn parking lot. N.T., p. 29. Officer Clee asked defendant if he made any stops along the way; defendant responded that he had not. Exhibit C-4, p. 2. Officer Clee concluded that defendant was attempting to deceive him, and in his experience deceptive behavior is one of the best indicators of criminal activity. N.T., p. 30; exhibit C-4, p. 2. Based on his observations in the Knights Inn parking lot, his observations before and during the traffic stop, and defendant's lack of candor with police, Officer Clee had Officer Cornish take defendant into custody and impound the vehicle in order to obtain a search warrant for the vehicle. N.T., p. 30; exhibit C-4, p. 2.

Officer Clee returned to the Knights Inn where he spoke to the woman he had seen with defendant. N.T., p. 30; exhibit C-4, p. 2. He approached room 209, where a man answered and invited him in. Exhibit C-4, p. 2. The woman Officer Clee observed with defendant was also in the room. N.T., p. 30; exhibit C-4, p. 2. While speaking with the woman Officer Clee spotted empty glassine bags, consistent with those used for heroin, in the trash can. N.T., p. 30. The woman told Officer Clee that she was in defendant's vehicle to pay for heroin she received the day before. N.T., p. 30; exhibit C-4, p. 2. Following the conversation Officer Clee transported the man and woman to headquarters. N.T., p. 30.

Officer Clee subsequently read defendant his *Miranda*[3] rights. N.T., pp. 32-33; exhibit C-4, p. 3. Defendant

_____

3. *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

waived his *Miranda* rights and gave a voluntary statement to police. N.T., pp. 32-34; exhibit C-4, p. 3. Defendant admitted that he sold three packets of heroin to the woman in the parking lot for $32, and he had a bundle of heroin packets hidden in the roof of his vehicle. N.T., pp. 32-34; exhibit C-4, p. 3. Defendant made it clear he was willing to cooperate with police in other drug-related investigations, and was thereafter released from custody. N.T., pp. 34-35.

The next day Officer Clee executed a search warrant on the vehicle and found a bundle of heroin packets in the roof of the vehicle, the location indicated by defendant. N.T., p. 36. Additionally, police found a needle, a bottle, two Pennsylvania driver's licenses and an Arizona driver's license. None of the licenses belonged to defendant. N.T., pp. 36-38; see also, exhibit C-2 (inventory sheet).

Defendant was charged with possession of a controlled substance with intent to deliver and possession of drug paraphernalia. On January 29, 2008, defendant appeared in court for a preliminary hearing, and after ruling that the Commonwealth had established a prima facie case, we proceeded to hear defendant's motion to suppress.

Defendant argued that the traffic stop was not supported by reasonable suspicion and that there was no probable cause to take him into custody at the conclusion of the traffic stop. Defendant requested that the court suppress his statements to police and the items found during the search of his vehicle, arguing such evidence was the fruit of an illegal search and seizure. We denied defendant's motions, and after a stipulated non-jury

trial we convicted defendant on both charges. On the possession with intent to deliver charge, we sentenced defendant to three years probation.[4]

## STATEMENT OF MATTERS. COMPLAINED OF ON APPEAL

On appeal defendant raises eight issues. They are:

(1) The trial court erred in holding that officers had reasonable suspicion to conduct a traffic stop of his vehicle.

(2) The trial court erred in holding that police officers had probable cause to conduct a traffic stop of appellant's vehicle.

(3) The trial court erred in holding that officers had probable cause to arrest appellant.

(4) The trial court erred in holding that officer had probable cause to seize appellant.

(5) The trial court erred in holding that the officer had probable cause to seize appellant's vehicle.

(6) The trial court erred in holding the statements made by appellant were knowingly, voluntarily and intelligently made and were not the "fruit" of the unlawful stop, arrest and seizure.

---

4. We imposed no further penalty on Count Two. As conditions of probation, we ordered that defendant pay the costs of prosecution, undergo a drug and alcohol and mental health evaluation and abide by any recommendations, complete 50 hours of community service, and maintain full-time employment or full-time educational enrollment.

(7) The trial court erred in holding that the search warrant to search appellant's vehicle was based on probable cause.

(8) The trial court erred in holding that the search warrant of appellant's vehicle was not the "fruit" of an illegal seizure.

## STANDARD OF REVIEW AND ANALYSIS OF THE ISSUES

Where a motion to suppress has been filed, the burden is on the Commonwealth to establish by a preponderance of the evidence that the challenged evidence is admissible. *Commonwealth v. Ruey,* 586 Pa. 230, 239-40, 892 A.2d 802, 807 (2006), citing *Commonwealth v. DeWitt,* 530 Pa. 299, 608 A.2d 1030 (1992).

The standard of review by the Pennsylvania Superior Court is whether the record supports the factual findings of a trial court and whether the legal conclusions drawn therefrom are free from error. *Commonwealth v. Mc-Clease,* 750 A.2d 320, 323 (Pa. Super. 2000), citing *Commonwealth v. Collazo,* 692 A.2d 1116 (Pa. Super. 1997). In reviewing an order from a suppression court, the Superior Court considers the Commonwealth's evidence, and only so much of the defendant's evidence as remains uncontradicted. The suppression court's factual findings will be accepted if they are supported by the evidence. *Commonwealth v. Hennigan,* 753 A.2d 245, 254 (Pa. Super. 2000), citing *Commonwealth v. Hoopes,* 722 A.2d 172 (Pa. Super. 1998). For ease of review, we have summarized defendant's "statement of matters complained of on appeal" into four issues:

## 1. *Was the Initial Stop of Defendant's Vehicle Based on a Reasonable Suspicion That Criminal Activity Was Afoot?*

In Pennsylvania, in order to execute a vehicle stop, for the purpose of conducting an investigatory detention, the stop must be supported by a reasonable suspicion that criminality is afoot. *Commonwealth v. Donaldson,* 786 A.2d 279, 281 (Pa. Super. 2001).

Reasonable suspicion must be based on specific and articulable facts, and while open to some degree of interpretation must be more than an "educated hunch." *Id.;* see also, *Commonwealth v. Powell,* 934 A.2d 721, 723 (Pa. Super. 2007).

"To establish grounds for reasonable suspicion, the officer must articulate specific observations which, in conjunction with reasonable inferences derived from those observations, led him reasonably to conclude, in light of his experience, that criminal activity was afoot and that the person he stopped was involved in that activity." *Commonwealth v. Reppert,* 814 A.2d 1196, 1204 (Pa. Super. 2002).

Defendant contends that at the time of the initial vehicle stop there was insufficient information known to Officer Clee to support a reasonable suspicion that criminality was afoot. The only way of determining the issue is to state, with as much specificity as possible, what Officer Clee knew at the time of the stop:

(1) Defendant was initially seen driving up and down the aisles at the Knights Inn without first going to the lobby.

(2) The Knights Inn is located in an area of Bensalem Township known for high narcotic trafficking activity.

(3) Officer Clee has investigated thousands of drug cases in that motel alone.

(4) Officer Clee has hundreds of hours of narcotic training specifically relating to drug dealing and has been assigned to the Special Investigations Unit of Bensalem Township for a period of six years, during which time over 1,500 drug arrests were made.

(5) Defendant eventually stopped his vehicle in front of room 209 and, after honking his horn, a woman exited the room and entered the vehicle.

(6) Officer Clee observed defendant reach into the roof of his vehicle and pass a small unidentified object to the woman.

(7) The woman then immediately passed a small unidentifiable object back to the defendant and reentered the motel room.

(8) The woman was in defendant's vehicle for approximately 45 seconds.

(9) Defendant's vehicle was stopped by another patrol officer approximately one and one-half miles away from the Knights Inn.

(10) As the vehicle was pulling over, Officer Clee observed the defendant reaching under the passenger seat and in and around the glove box before the car came to rest.

(11) As the officer approached the vehicle, he noticed what appeared to be "Chore Boy" all over the inside of the vehicle.

(12) Chore Boy is a cleaning product which is commonly used to smoke crack-cocaine.

(13) Defendant was asked to step to the rear of the vehicle while Officer Clee searched the area where defendant was reaching during the stop for any weapons which were present.

(14) Defendant was asked where he was going and his answer was that he was coming from traffic court in Philadelphia to Frankford Hospital to visit with his girlfriend and new child.

(15) Since the hospital and traffic court are both located in Philadelphia there was no reason for the defendant to be traveling in Bensalem Township, Bucks County.

(16) Although asked repeatedly, defendant refused to admit that he had just been in the parking lot of the Knights Inn.

(17) Specifically, defendant was asked if he had made any stops along the way from the traffic court to the hospital and he replied that he had not, which was obviously not true.

(18) Defendant was placed under arrest and taken to police headquarters.

(19) The vehicle was not immediately searched, but was impounded to await the issuance of a search warrant.

The information described above was known to Officer Clee at the time of the initial traffic stop leading up to defendant's arrest. This court found that it was reasonable for Officer Clee to conclude that a drug sale had just taken place and that he had witnessed that sale. Furthermore, despite having that knowledge, Officer Clee did not search the vehicle while on the street, but instead allowed a neutral judicial officer to review the probable cause prior to any search being conducted. We believe the above fairly summarizes the evidence and justifies this court's conclusion regarding the initial traffic stop of defendant's vehicle.

### 2. Was Defendant's Arrest Supported by Probable Cause?

It was agreed between the parties that when defendant was placed into the rear of the police car and handcuffed to be transported to police headquarters that he was clearly then under arrest. The issue raised by defendant is, at that time, whether there was probable cause to believe defendant had committed a crime.

The Supreme Court of Pennsylvania in *Commonwealth v. Dunlap,* 941 A.2d 671 (Pa. 2007), recently clarified the standard and factors relevant to a probable cause determination. In *Dunlap,* a police officer, working in a high-crime area, observed the defendant exchange currency for an unknown object without seeing any other suspicious activity. *Id.,* 941 A.2d at 673. Shortly thereafter, that officer arrested the defendant and searched him without a warrant, and found crack-cocaine. *Id.* The Supreme Court ruled that the limited information avail-

able to the officer was a mere suspicion and did not constitute probable cause. *Id.,* 941 A.2d at 679.

"The existence or nonexistence of probable cause is determined by the totality of the circumstances. . . . The totality of the circumstances test requires a court to determine whether 'the facts and circumstances which are within the knowledge of the officer at the time of the arrest, and of which he has reasonably trustworthy information, are sufficient to warrant a man of reasonable caution in the belief that the suspect has committed or is committing a crime.'" *Commonwealth v. Dunlap,* 941 A.2d 671, 674-75 (Pa. 2007). (citations omitted)

A nonexhaustive list of factors to consider is: the time and location of transaction, the number of transactions, the place where small items were kept, and the movements and manners of the parties. *Dunlap,* 941 A.2d at 675 (recounting the factors examined in *Commonwealth v. Lawson,* 454 Pa. 23, 309 A.2d 391 (1973)). In *Dunlap,* the court made clear that, "police training and experience, *without more,* is not a fact to be added to the quantum of evidence to determine if probable cause exists, but rather a 'lens' through which courts view the quantum of evidence observed at the scene." *Id.* (emphasis in original) Indeed, the court recognized that a police officer's training and experience provide officers with the ability to identify packages which are likely to contain illegal narcotics, and to recognize illegal activity where civilians may not. *Dunlap,* 941 A.2d at 675-76.

Defendant argues that his case is identical to *Dunlap* and that Officer Clee's observations do not rise to the level of probable cause. However, we believe the cases

are factually distinguishable, simply based on the information known to Officer Clee at the time of defendant's arrest. We have summarized that information heretofore and believe it is more than sufficient to justify defendant's arrest. We note, also, that defendant did not testify or offer any evidence at the hearing on his motion to suppress and we accepted, therefore, all of Officer Clee's uncontroverted testimony.

In our view, Officer Clee took defendant into custody based, not on a hunch or gut feeling but on specific observations, which when considered in light of his training and experience, allowed him to conclude reasonably that, while in his car in the parking lot of the Knights Inn, defendant had conducted an illegal drug transaction.

### 3. *Was the Search Warrant Obtained for Defendant's Vehicle Supported by Probable Cause?*

On January 31, 2007, the day after defendant's arrest, a search warrant was obtained for defendant's vehicle by Officer Clee. That search warrant was approved by District Justice Joseph P. Falcone of Penndel, Bucks County, Pennsylvania. Within the warrant, Officer Clee spelled out his special training in narcotics investigations indicating that, in addition to the testimony already summarized within this opinion, he has been a police officer for 13 years, that he is approved as a special Bucks County Detective, which allows him to investigate narcotics activities throughout the entire county of Bucks and that his unit has applied for and been approved for at least 50 search warrants in the area of the Knights Inn within the past five years.

In the search warrant, Officer Clee spelled out in summary fashion the information leading up to defendant's arrest. He also indicated that subsequent to that arrest, he interviewed the female in room 209 of the Knights Inn and that he observed within her room used glassine packets of heroin. The female identified to Officer Clee as Katherine O'Neill stated that she has been buying heroin from the defendant over the past six months and that, on the day before, she had paid defendant a $32 debt from prior heroin transactions. She also stated that during her encounter with defendant, he offered her heroin and it was her belief that the defendant had that heroin on or about his person. She did not, however, see the heroin.

Finally, within the body of the search warrant, Officer Clee indicated that at 4 p.m. on January 30, 2007, he interviewed defendant after defendant waived his right to remain silent and agreed to speak with him without a lawyer being present. Officer Clee noted that the defendant admitted that he went to meet with Katherine O'Neill on that day and that he sold her three packs of heroin for $32. He also indicated that he had one bundle of heroin remaining in the roof of his vehicle.

Based on the above facts, District Justice Falcone issued the search warrant allowing defendant's vehicle to be searched for any and all items of drugs and/or drug paraphernalia possessed in violation of the Pennsylvania Controlled Substance Drug Device and Cosmetic Act of 1972. It was our determination that the above summarized information presented to the district justice was certainly sufficient for the issuance of a search warrant, especially with the defendant indicating that there were

controlled substances remaining in the vehicle, which was then in police custody. We believe, therefore, that the issuance of the search warrant was supported by probable cause.

### 4. *Were Defendant's Statements to the Police Knowingly, Intelligently and Voluntarily Made?*

The only evidence received by this court at the motion to suppress was offered by Officer Clee which recounted the waiver of defendant's *Miranda* rights and his statement to Officer Clee. The Commonwealth introduced the actual *Miranda* card used by Officer Clee and defendant's answers were written on the card itself. They ended with "I'd like to speak to you" with the defendant's signature immediately thereafter. As we previously indicated, defendant did not testify at his motion to suppress, or at trial, and offered no evidence to suggest that the waiver of his right to remain silent and his statement to Officer Clee was anything but knowingly, intelligently and voluntarily made. Accordingly, we believe that this issue also has no merit.

The remaining issues raised by defendant on this appeal are whether the police had the right to seize his vehicle after his arrest, and whether or not his statement and the physical evidence seized from his vehicle are the "fruits" of an illegal seizure. Police may impound a vehicle following an arrest of the driver pending the obtaining of a search warrant. *Commonwealth v. Hennigan,* 753 A.2d 245, 256 (Pa. Super. 2000); see also, *Commonwealth v. Holzer,* 480 Pa. 93, 102-103, 389 A.2d 101, 106 (1978). As defendant was lawfully taken into custody, the subsequent impoundment of his vehicle was

also lawful. Similarly, as defendant's arrest and seizure were proper, his subsequent statement made to Officer Clee was not the fruit of any primary illegality. We believe, accordingly, that these remaining issues should be dismissed as they are without merit.

## CONCLUSION

The foregoing represents the reasons for this court's denial of defendant's motion to suppress evidence and his subsequent judgment of sentence entered on January 29, 2008.