J-A15018-20

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| v. | : | |
| | : | |
| YASSER ALMANZAR | : | |
| | : | |
| Appellant | : | No. 1463 EDA 2019 |

Appeal from the Order Entered April 29, 2019
In the Court of Common Pleas of Philadelphia County
Criminal Division at No(s): CP-51-CR-0005817-2017

BEFORE: LAZARUS, J., KING, J., and STRASSBURGER, J.[*]

MEMORANDUM BY KING, J.:        **FILED SEPTEMBER 15, 2020**

Appellant, the Commonwealth of Pennsylvania, appeals from the order entered in the Philadelphia County Court of Common Pleas, granting the suppression motion of Appellee, Yasser Almanzar.[1] We affirm.

The relevant facts and procedural history of this case are as follows. On May 22, 2017, Sergeant Brian Myers of the Philadelphia Police Department conducted surveillance at 3329 Bleigh Avenue, responding to complaints

_____

[*] Retired Senior Judge assigned to the Superior Court.

[1] Pursuant to Pa.R.A.P. 311(d), the Commonwealth has certified in its notice of appeal that the suppression order substantially handicapped or terminated the prosecution of the Commonwealth's case. Accordingly, this appeal is properly before us for review. ***See Commonwealth v. Cosnek***, 575 Pa. 411, 421, 836 A.2d 871, 877 (2003) (stating Rule 311(d) applies to pretrial ruling that results in suppression, preclusion or exclusion of Commonwealth's evidence).

about several Hispanic men entering and exiting the property while carrying packages. (*See* N.T. Hearing, 4/29/19, at 28). Sergeant Myers observed two Hispanic men exit the property and enter a white Acura parked out front. (*Id.* at 32). The sergeant followed the Acura to 7347 Belden Street, where one of the occupants entered the house carrying a box of diapers. (*Id.* at 33). The same man left the house approximately five minutes later and reentered the Acura. (*Id.*) Sergeant Myers followed the Acura back to 3329 Bleigh Avenue, where the two men parked and went back inside the house. (*Id.* at 33-34).

Another unidentified male arrived at the house and went inside for approximately fifteen minutes. (*Id.* at 34). Then, the three men exited the house together, entered the Acura, drove to Crispin Street, and pulled over. (*Id.*) A white Nissan pulled up behind the Acura. (*Id.*) Sergeant Myers recognized the Nissan from a prior investigation. (*Id.* at 38). The driver of the Acura exited his vehicle, entered the Nissan, remained there for three to five minutes, returned to the Acura, and drove off. (*Id.* at 35).

Sergeant Myers followed the Nissan until it parked at the intersection of Stanwood and Eastwood Streets. (*Id.*) A short time later, a white Jeep Cherokee arrived and parked in front of the Nissan. (*Id.*) The driver of the Nissan exited his vehicle and entered the front passenger seat of the Jeep. (*Id.* at 36). After five minutes, the Nissan driver exited the Jeep, returned to the Nissan, retrieved an object, and gave it to the Jeep driver. (*Id.* at 37). Following this exchange, both vehicles left the scene and Sergeant Myers

concluded his surveillance. (*Id.*) Significantly, Sergeant Myers did not observe Appellee or his co-defendant, Jose Benitez,[2] during the May 22, 2017 surveillance.

On May 24, 2017, Sergeant Myers returned to 3329 Bleigh Avenue to conduct additional surveillance. (*Id.* at 43). Sergeant Myers received assistance from Officer Edward Slater, who was conducting surveillance of the white Jeep at 2204 Stanwood Street. (*Id.*) Officer Slater observed Mr. Benitez exit the property and walk to the Jeep. (*Id.* at 44). At the same time, Appellee arrived in a white Chevrolet Malibu, which he "backed up to the white Jeep, so the trunk of the Chevy was facing the trunk of the" Jeep. (*Id.*) Mr. Benitez retrieved a large, green bag from the trunk of the Jeep and transferred it into the trunk of the Chevrolet. (*Id.* 44-45). Appellee drove off in the Chevrolet, and Mr. Benitez subsequently left in the Jeep. (*Id.* at 49, 59).

Officer Slater followed the Chevrolet, and Sergeant Myers joined the pursuit. (*Id.*) Once the Chevrolet pulled over on the 3000 block of Gilford Street, Sergeant Myers decided to stop the vehicle for further investigation. (*Id.* at 50). A search of the trunk revealed 1,150 bundles of heroin inside the green bag. (*Id.* at 53). Sergeant Myers contacted a back-up officer and ordered him to conduct a stop of Mr. Benitez in the Jeep. (*Id.* at 59). The back-up officer stopped the Jeep, but did not discover any drugs. (*Id.* at 59).

---

[2] Mr. Benitez is the appellee in a related appeal, docketed at 1462 EDA 2019.

An additional search of the residence at 2204 Stanwood Street yielded cellphones and cash, but no drugs or drug paraphernalia.  (*Id.* at 18).

The Commonwealth charged Appellee and Mr. Benitez with possession of a controlled substance, possession of a controlled substance with intent to deliver, possession of drug paraphernalia, and criminal conspiracy.[3]  On July 26, 2017, Appellee filed an omnibus pretrial motion to suppress all evidence obtained as a result of the warrantless vehicle search.  Mr. Benitez filed his own suppression motion on September 14, 2018.  On April 29, 2019, the court conducted a joint suppression hearing.

At the hearing, Sergeant Myers testified that he had been involved with "[o]ver a thousand" narcotics investigations in the past eighteen years.  (N.T. Hearing at 23).  Sergeant Myers explained that the property subject to the initial complaints, 3329 Bleigh Avenue, had iron bars covering the windows and doors on the first floor.  (*Id.* at 29).  Sergeant Myers claimed he had seen a similar setup "one other time, probably a year before" in a previous narcotics investigation in the same neighborhood.  (*Id.* at 30).

Ultimately, Sergeant Myers provided the reasons for his decision to stop Appellee in the Chevrolet.  Sergeant Myers "believed a large amount of narcotics were in the trunk of" the Chevrolet.  (*Id.* at 50).  Sergeant Myers based his decision on the following:

> Based on the observations that we [saw] on Stanwood

---

[3] 35 P.S. § 780-113(a)(16), (30), (32), and 18 Pa.C.S.A. § 903, respectively.

Street on the 22nd [of May] and quick meetings between different people in different vehicles, leaving the area, the bag being transferred from the Jeep to the Chevy, my past investigations, being familiar with the cars being utilized, again, the Chevy[4] and Nissan.

(*Id.* at 51).

Officer Slater testified that he had served as a police officer for twelve years with two-and-a-half years of narcotics work. (*Id.* at 73). Officer Slater had conducted approximately ten narcotics investigations in the neighborhood at issue, "usually pertaining to bag houses of heroin." (*Id.* at 72). Although Officer Slater observed Mr. Benitez retrieve the bag from the trunk of the Jeep and transfer it to the Chevrolet, he did not observe any drugs or the exchange of money. (*Id.* at 86-89).

Appellee also testified, stating he had received permission to drive the Chevrolet from a man named "Jose." (*Id.* at 92). Although Jose was "not really a close friend," Appellee asked to borrow the Chevrolet after seeing Jose "one day at the barbershop." (*Id.* at 92, 94). Appellee told Jose he "needed to pick up baby clothes," and Jose agreed that he could use the car for the

_____

[4] Earlier in his direct examination, Sergeant Myers stated that he had seen the same Chevrolet during a prior investigation. (N.T. Hearing at 47). Defense counsel objected, the court sustained the objection, the parties discussed the matter further, and defense counsel withdrew his objection. (*Id.* at 47-48). Following the withdrawal of the objection, the prosecutor did not immediately resume her line of questioning concerning Sergeant Myers' prior encounter with the Chevrolet. (*Id.* at 49). When Sergeant Myers subsequently reiterated that his prior encounter with the Chevrolet contributed to his decision to stop the vehicle on this occasion, defense counsel did not object to the testimony. (*Id.* at 51).

day. (*Id.* at 98).

Immediately following the hearing, the court found "the evidence to be insufficient to meet probable cause for stopping" the Chevrolet, and it suppressed the drugs obtained as a result of the vehicle search. (*Id.* at 119). The Commonwealth timely filed a notice of appeal on May 21, 2019. On May 23, 2019, the court ordered the Commonwealth to file a Pa.R.A.P. 1925(b) concise statement of errors complained of on appeal. The Commonwealth timely filed its Rule 1925(b) statement on June 12, 2019.

The Commonwealth raises three issues on appeal:

> Did the suppression court err in concluding that the search of a vehicle violated [Appellee's] Fourth Amendment rights despite his failure to establish a reasonable expectation of privacy and where, in any event, there was probable cause to search?

> Did the suppression court err in precluding the Commonwealth from entering evidence of the officers' prior observation and experiences that was directly relevant to the totality of the circumstances supporting probable cause?

> Did the suppression court err in failing to consider the officer's extensive experience where a nexus existed between the experience and the observations made in this case?

(Commonwealth's Brief at 4).

The Commonwealth's arguments are related, and we address them together. Initially, the Commonwealth argues Appellee provided "vague and inconsistent testimony that he borrowed the car from a friend," which was insufficient to establish that Appellee possessed a reasonable expectation of

privacy in the Chevrolet. (*Id.* at 14). The Commonwealth claims Appellee needed to present additional evidence to corroborate his own, self-serving testimony that he received permission from the vehicle's owner.

Even if Appellee had established a reasonable expectation of privacy, the Commonwealth asserts the police had probable cause to search the vehicle. The Commonwealth emphasizes that the officers observed a "series of transactions involving multiple actors using various vehicles," which were factors giving rise to probable cause. (*Id.* at 22). The Commonwealth argues that the officers' "past experiences, combined with the suspicious series of transactions that took place, were enough to establish at least probable cause that [Appellee] was transporting narcotics." (*Id.* at 24).

Further, the Commonwealth complains the suppression court precluded it "from presenting a significant quantum of evidence of the officers' prior narcotics investigations involving the same vehicles and area at issue here." (*Id.*) Although the Commonwealth concedes that the court permitted some information about the officers' prior observations, the court "denied the Commonwealth the opportunity to develop the type of record that would explain why these officers, in this neighborhood, would have had a basis to make inferences about probable cause with regard to their specific observations in the current investigation." (*Id.* at 27).

The Commonwealth also relies on *Commonwealth v. Thompson*, 604 Pa. 198, 210, 985 A.2d 928, 935 (2009), for the proposition that an officer's

experience is relevant where he can "demonstrate a nexus between his experience and the search, arrest, or seizure of evidence." The Commonwealth contends such a nexus existed here, where the officers had significant experience conducting narcotics investigations in this neighborhood, and they had observed other drug dealers engaging in behavior similar to Appellee. Based upon the foregoing, the Commonwealth concludes this Court must reverse the order granting Appellee's suppression motion. We disagree.

When the Commonwealth appeals from a suppression order, the relevant scope and standard of review are well-settled:

> [We] consider only the evidence from the defendant's witnesses together with the evidence of the prosecution that, when read in the context of the entire record, remains uncontradicted. The suppression court's findings of fact bind an appellate court if the record supports those findings. The suppression court's conclusions of law, however, are not binding on an appellate court, whose duty is to determine if the suppression court properly applied the law to the facts.
>
> Our standard of review is restricted to establishing whether the record supports the suppression court's factual findings; however, we maintain *de novo* review over the suppression court's legal conclusions.

*Commonwealth v. Korn*, 139 A.3d 249, 252-53 (Pa.Super. 2016), *appeal denied*, 639 Pa. 157, 159 A.3d 933 (2016) (internal citations and quotation marks omitted). "It is within the suppression court's sole province as factfinder to pass on the credibility of witnesses and the weight to be given to their testimony. The suppression court is free to believe all, some or none of

the evidence presented at the suppression hearing." ***Commonwealth v. Elmobdy***, 823 A.2d 180, 183 (Pa.Super. 2003), *appeal denied*, 577 Pa. 701, 847 A.2d 58 (2004) (internal citations omitted).

"The concept of standing in a criminal search and seizure context empowers a defendant to assert a constitutional violation and thus seek to exclude or suppress the government's evidence pursuant to the exclusionary rules under the Fourth Amendment of the United States Constitution or Article 1, Section 8 of the Pennsylvania Constitution." ***Commonwealth v. Powell***, 994 A.2d 1096, 1103 (Pa.Super. 2010), *appeal denied*, 608 Pa. 665, 13 A.3d 477 (2010) (quoting ***Commonwealth v. Hawkins***, 553 Pa. 76, 80, 718 A.2d 265, 266 (1998)). "A defendant moving to suppress evidence has the preliminary burden of establishing standing and a legitimate expectation of privacy." ***Commonwealth v. Maldonado***, 14 A.3d 907, 910 (Pa.Super. 2011) (quoting ***Commonwealth v. Burton***, 973 A.2d 428, 435 (Pa.Super. 2009) (*en banc*)).

> Standing requires a defendant to demonstrate one of the following: (1) his presence on the premises at the time of the search and seizure; (2) a possessory interest in the evidence improperly seized; (3) that the offense charged includes as an essential element[,] the element of possession; or (4) a proprietary or possessory interest in the searched premises. A defendant must separately establish a legitimate expectation of privacy in the area searched or thing seized. Whether [a] defendant has a legitimate expectation of privacy is a component of the merits analysis of the suppression motion. The determination whether [a] defendant has met this burden is made upon evaluation of the evidence presented by the Commonwealth and the defendant.

*Powell, supra* at 1103-04 (quoting *Commonwealth v. Burton*, 973 A.2d

428, 435 (Pa.Super. 2009) (*en banc*)) (internal citations omitted).

> Regarding challenges to the search of an automobile, we note:
>
> > [G]enerally under Pennsylvania law, a defendant charged with a possessory offense has automatic standing to challenge a search. However, in order to prevail, the defendant, as a preliminary matter, must show that he had a privacy interest in the area searched.
> >
> > An expectation of privacy is present when the individual, by his conduct, exhibits an actual (subjective) expectation of privacy and that the subjective expectation is one that society is prepared to recognize as reasonable. The constitutional legitimacy of an expectation of privacy is not dependent on the subjective intent of the individual asserting the right but on whether the expectation is reasonable in light of all the surrounding circumstances.

*Burton, supra* at 435 (internal quotation marks omitted). *See also*

*Commonwealth v. Brown*, 64 A.3d 1101, 1106-07 (Pa.Super. 2013), *appeal*

*denied*, 622 Pa. 747, 79 A.3d 1096 (2013) (holding defendant failed to

establish reasonable expectation of privacy in vehicle where he offered no

evidence of permission to drive from vehicle owner). "[T]he mere fact that a

defendant is operating a motor vehicle will not, without more, sustain a finding

that the operator had a reasonable expectation of privacy in the operated

vehicle where other evidence suggests he … had no such reasonable

expectation of privacy." *Commonwealth v. Newman*, 84 A.3d 1072, 1078

(Pa.Super. 2014), *appeal denied*, 627 Pa. 757, 99 A.3d 925 (2014).

In **Newman**, officers conducting surveillance observed an individual exit

an alley and pass a black plastic bag to the defendant. *Id.* at 1075. Although police did not witness the defendant exchange any money for the bag, an officer tailed the defendant and conducted a vehicle stop. *Id.* A search of the vehicle revealed vials of crack cocaine in the black bag. *Id.* The defendant filed a motion to suppress the evidence found as a result of the search. At the suppression hearing, the Commonwealth did not present any evidence that the defendant did not own or have permission to use the vehicle, and the court granted the defendant's motion to suppress. *Id.* On appeal, this Court affirmed. Significantly, this Court determined that the defendant had a reasonable expectation of privacy in the vehicle he was driving where (1) he was alone in the vehicle at the time of the stop; (2) he vigorously objected to the stop; and (3) he made no attempt to flee. *Id.* at 1076-78.

In making a determination regarding probable cause, courts should consider "whether the facts and circumstances which are within the knowledge of the officer at the time of the arrest, and of which he has reasonably trustworthy information, are sufficient to warrant a [person] of reasonable caution in the belief that the suspect has committed or is committing the crime." *Commonwealth v. Toro*, 638 A.2d 991, 1002-03 (Pa.Super. 1994) (quoting *Commonwealth v. Rodriguez*, 526 Pa. 268, 272-73, 585 A.3d 988, 990 (1991)).

> The question we ask is not whether the officer's belief was correct or more likely true than false. Rather, we require only a probability, and not a *prima facie* showing, of criminal activity. In determining whether probable cause exists, we

apply a totality of the circumstances test.

*Commonwealth v. Brogdon*, 220 A.3d 592, 599 (Pa.Super. 2019), *appeal denied*, ___ Pa. ___, 226 A.3d 967 (2020) (internal citation omitted). *See also Commonwealth v. Banks*, 540 Pa. 453, 455, 658 A.2d 752, 753 (1995) (holding probable cause did not exist where there was "a single, isolated exchange of currency for some unidentified item or items, taking place on a public street corner at midday, and where [the defendant] fled when approached by the officer"); *Commonwealth v. Lawson*, 454 Pa. 23, 309 A.2d 391 (1973) (explaining probable cause existed where officers observed husband and wife engage in three, separate cash-for-item exchanges with buyers, at night, on street, and wife kept unidentified items secreted on her person between transactions).

Instantly, Appellee testified that the owner of the Chevrolet gave him permission to use the vehicle. Appellee's testimony explained when and why the owner provided permission. Moreover, Appellee, the sole occupant of the vehicle, made no attempt to flee when stopped. Although the Commonwealth attacks the veracity of Appellee's testimony, it did not actually present evidence to contradict Appellee's claim of permission. Absent any evidence to the contrary, Appellee demonstrated a reasonable expectation of privacy in the vehicle he was driving at the time of the stop. *See Burton, supra*; *Newman, supra*.

Regarding its probable cause determination, the court admitted

significant evidence regarding the officers' prior investigations and experiences. The court recognized Sergeant Myers' testimony that he had seen iron gates covering doors and windows of a home in a prior drug investigation. The court acknowledged Sergeant Myers' claim that he had seen drug dealers park in a "trunk-to-trunk" formation to transfer contraband. (N.T. Hearing at 118). The court also accepted that Sergeant Myers' observations were informed by a "prior drug investigation" involving similar vehicles. (**Id.** at 119; **see also** Suppression Court Opinion, filed August 2, 2019, at 2).[5]

Despite this evidence, the court emphasized that the officers did not observe any "hand-to-hand transactions" indicative of drug sales. (**Id.**) The court determined the officers' observations did not create probable cause under the circumstances, even in light of the officers' prior investigations and experiences:

> [N]either the complaints from neighbors of Hispanic men entering 3329 Bleigh Avenue two days before, nor in any of the subsequent interactions of the unidentified men driving and meeting others provided officers with probable cause to search the Chevy. During the May 22 investigation, [an officer] observed separate encounters that involved no

_____

[5] Regarding the Commonwealth's assertion that it did not have the opportunity to develop the record with more details regarding the officers' prior observations and experiences, our review confirms the Commonwealth did present evidence to establish the nexus between the officers' experiences and the search of the Chevrolet. To the extent certain evidentiary rulings were not in favor of the Commonwealth, the suppression court merely "required the Commonwealth to more narrowly and precisely present its questions to witnesses." (Suppression Court Opinion at 7).

money, but only the transfer of a box of diapers and an "object." Lacking the specificity to determine whether drugs were actually being moved, police officers had no objective basis to distinguish such transactions from ordinary, innocuous activity.

* * *

Applying a totality of the circumstances test, the [c]ourt did not find that the single, midday transfer of a bag, whose contents were unknown, from the trunk of one car to another between two unidentified individuals provided officers with probable cause to search the vehicle Appellee was driving.

(Suppression Court Opinion at 6) (internal record citations omitted).

While the Commonwealth likens the instant circumstances to the "multiple, complex, suspicious transactions" at issue in **Lawson, supra**, the record supports the suppression court's finding that Appellee and Mr. Benitez conducted one, daytime, trunk-to-trunk transfer of a bag. As a result, the court correctly determined that Appellee's case is more akin to the circumstances in **Banks, supra**. On this record, we agree that the officers lacked facts sufficient to warrant a person of reasonable caution in the belief that Appellee was committing a crime. **See Toro, supra**. Accordingly, we affirm the order granting Appellee's motion for suppression of the evidence obtained as a result of the illegal vehicle search.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: <u>9/15/2020</u>